POLANCO, PETITIONER AND APPELLANT, *v.* ALVAREZ, CONTESTANT AND APPELLEE.

APPEAL from the District Court of Humacao in an Action for the Appointment of a Guardian.

No. 3331.—Decided January 28, 1925.

DIVORCE—INNOCENT SPOUSE—PATRIA POTESTAS.—Although not prayed for in the complaint nor expressly adjudged by the judgment, the innocent spouse has the right of *patria potestas* over the minor children in case of divorce.

ID.—ID.—ID.—DEATH OF INNOCENT SPOUSE.—Under the present law and juris-

prudence in Porto Rico the guilty spouse in case of divorce loses the *patria potestas* over the children and does not recover it upon the death of the innocent spouse.

The facts are stated in the opinion.

*Messrs. C. Benítez* and *J. Puig Morales* for the appellant.

*Mr. B. Fernández García* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an appeal from a judgment denying a petition for the appointment of a guardian for a minor daughter of divorced spouses after the death of the innocent spouse, the wife, who had the daughter under her care and *patria potestas*. The petition was presented on the theory that the guilty spouse had lost absolutely the *patria potestas* as a result of the divorce. The district court held that upon the death of the innocent spouse the guilty spouse was entitled to the *patria potestas* and, therefore, that a guardian should not be appointed. The appellant contends that the court erred in putting that construction upon the laws in force in Porto Rico. That assignment of error raises the fundamental question to be considered in this appeal. The other assignments of error are of no importance.

The facts of the case are narrated in the opinion of the trial court as follows:

"Ramón Alvarez and María Polanco Santiago were married on September 21, 1908. During their wedlock a child was born. It was named Rosa María Alvarez Polanco and is now a maiden of fourteen years of age. On August 12, 1920, María Polanco Santiago brought an action for divorce in the District Court of Humacao against her husband, Ramón Alvarez López, on the ground of desertion for more than a year and alleged also in the complaint that the child born of the marriage was under her care. In the complaint the plaintiff prayed for a judgment dissolving and severing the marriage bond existing between the parties, with such other relief as should be afforded. After a trial judgment was rendered on November 26, 1920, holding that the law and the facts were in favor of the plaintiff and against the defendant, and that consequently the marriage bond existing between the parties was severed. In

the judgment no special reference was made to the child, Rosa María, which remained in the custody of the mother, the said María Polanco Santiago, until she died in Caguas on December 31, 1923, when the said child passed to the care of its father. María Polanco Santiago died intestate and her daughter, Rosa María Alvarez Polanco, was declared to be her sole and universal heir by this Court on January 15, 1924.

"The petitioner, Nicolás Polanco Santiago, is a maternal uncle of Rosa María Alvarez Polanco, and he alleged in the petition that the said minor is without a guardian to represent her person and manage her property, because of the fact that her lawful father, Ramón Alvarez López, is deprived of the right of *patria potestas* by virtue of the decree of divorce, and he prays the court to appoint a person to act as her guardian after giving the necessary bond. The contestant father of the minor, Ramón Alvarez López, alleges in opposition to the petition that the complaint in the action of divorce brought against him by María Polanco Santiago did not pray that the daughter born of the marriage should remain in the custody and under the *patria potestas* of the mother and that it was not so ordered in the decree of divorce, for which reason he, the lawful father, has the *patria potestas* of his said daughter, Rosa María Alvarez Polanco, praying that it be so declared, consequently denying the petition for the appointment of a guardian."

After narrating the facts, the trial court said:

"Two questions of law are raised, as follows:

"1.—Whether a decree of divorce gives the *patria potestas* over the children to the innocent spouse, although it be not expressly prayed for or granted by the decree.

"2.—Whether the guilty spouse recovers the *patria potestas* upon the death of the innocent spouse."

In disposing of the first question the court said:

"Section 175 of the Civil Code provides that in all cases of divorce the minor children shall be placed under the *patria potestas* of the party who has obtained the decree. Section 234 of the said code declares that the father or the mother loses the *patria potestas* over his or her children, when, in a suit for divorce, a final decree awards the custody of the children to one or the other party. On this last section the contestant bases his allegation that he still has

the *patria potestas* over his minor daughter, because the decree did not give the custody to the mother. It is not a matter of judicial discretion to give or not to give the custody of the children to the innocent spouse, thus establishing the loss of the *patria potestas;* but that is one of the effects or a necessary consequence of the decree of divorce, as is also the division of properties of every class between the spouses. Section 175 of the Civil Code is mandatory. The minor children shall be placed in the care and under the *patria potestas* of the innocent spouse, and it was not necessary in this case that the decree should order it expressly. Section 175 of the Civil Code of Porto Rico is similar to section 157 of the Louisiana Code, and in construing the said section the Supreme Court of that State has held that when a marriage is dissolved by divorce the custody of the children is retained by the party who obtained the decree, it being unnecessary that the decree so order specially. Lemunier v. McClearly et al., 37 La. Ann. 133. See also Crochet v. Dugas, 126 La. 285. In the present case the mother had the custody of her daughter and with it the *patria potestas,* and she retained them until her death.''

Continuing, on the second question the court expressed itself as follows:

''According to section 233 of the Civil Code, the *patria potestas* ends only when any one of the following circumstances occurs: The death of the parents or of the child; the emancipation of the child; the adoption of the child by another. And although it is true that section 234 of the said code provides that the father or the mother loses the *patria potestas* over his or her children, when, in a suit for divorce, a final decree awards their custody to one or the other party, the intention of the legislators was not to deprive them of that right forever, for in the statutes governing guardianship and determining in what cases guardians should be appointed there is no provision that such an appointment should be made in case of the death of the innocent spouse and the survival of the guilty spouse. And as a guide in deciding this very important question the court should take into consideration section 236 of the said code which prescribes the only case in which when the parents are living a guardian may be appointed; *i. e.,* if they treat their children with excessive harshness or give them commands, advice or examples of a corruptive nature, and to that statute the maxim *expresio unius est exclusio alterius* is applicable. See Rojas v. Co-

lón, 27 P.R.R. 805; Le Hardy v. Acosta 18 P.R.R. 438; Cuevas v. Cartagena, 21 P.R.R. 209; Arbona v. Torres, 24 P.R.R. 423. Section 234 should be construed as an incidental restriction of the legal relations between parent and child, but never as absolutely destroying the bonds created by nature, because if the parent continues to have obligations toward the child, those obligations arise from an existing bond and if that bond should be broken absolutely to the extent of destroying the rights of the parent, the logical conclusion would be that his obligations had terminated also. And a divorce in no case deprives the children of any of the rights or advantages conferred upon them by law or belonging to them by reason of the marriage. Section 176 of the Civil Code.

  *   *   *   *   *   *   *

"Article 73 of the Spanish Civil Code, which includes in part sections 173, 174 *et seq.* of our code, provides that 'upon the death of the innocent spouse, the guilty one shall recover the parental authority and his or her rights, when the cause which gave rise to the divorce should have been adultery; violence to the person, or grave insult. When the cause is different, a guardian shall be appointed for the children.' This means that under the Spanish law the guilty spouse recovers the *patria potestas* over his minor children upon the death of the innocent spouse unless the cause of the divorce was 'Violence exercised by the husband toward the wife in order to force her to change her religion; the proposal of the husband to prostitute his wife; the attempts of the husband or wife to corrupt their sons or to prostitute their daughters, and connivance in their corruption or prostitution; the condemnation of a spouse to perpetual chains or hard labor.' Abandonment is not a cause for divorce under the Spanish law (article 105 of the Spanish Civil Code), but if it were, perhaps the guilty spouse would recover the *patria potestas* upon the death of the innocent spouse. Undoubtedly the Spanish legislators took into consideration the reasons for the termination of the marital life in determining when the guilty spouse could recover the *patria potestas,* forbidding such recovery when the divorce was the result of perverse acts and evil intentions concerning the children. See 1 Manresa, 364.

"The only case under section 164 of our Civil Code in which it may be said that a divorce shall be granted for an offense against the children is stated in subdivision 7, as follows: 'The attempt of the husband or wife to corrupt their sons or to prostitute their daughters, and connivance in their corruption or prostitution.' None of the other causes of divorce determined by the statute can

be said to imply an offense against the offspring. The father may commit adultery, or be convicted of a felony involving the loss of his civil rights, or be a habitual drunkard, or addicted to the excessive use of opium or other narcotic, or treat the wife cruelly or inflict upon her grave insults, or abandon her for more than a year, or become incurably impotent after marriage, and still, notwithstanding all of those causes of divorce recognized by our Civil Code, be a good father and love his children. Would it not be extremely cruel and inhuman to deprive a father forever because of his absolute, perpetual and incurable impotency supervening after marriage, on which ground his wife obtained a divorce, of his right to the *patria potestas* of a child born before that condition came upon him?''

The trial judge goes on to cite the jurisprudence of California to the effect that upon the death of the spouse who was given the custody of the minor child, that custody passes to the other spouse, and finally attempts unsuccessfully to distinguish this case from that of *Mallén* v. *Vidal,* 25 P.R.R. 624.

An examination of the transcript discloses that the facts have been stated fairly by the trial judge. His conclusion that although it be not so ordered expressly by the judgment, the custody of the children belongs to the innocent spouse, has our approval; but we can not agree with him that upon the death of the innocent spouse the guilty one recovers the exercise of the *patria potestas,* considering the actual status of the law and the jurisprudence in Porto Rico.

Perhaps it may be a *casus omissus,* inasmuch as every logical consideration militates in favor of the recovery by the guilty spouse in the divorce of the custody of the children upon the death of the *innocent* spouse in proper cases. Among the causes for divorce recognized by law are some which the legislators could not have considered sufficient to justify the absolute loss of the *patria potestas.*

But the fact is that the law in force in Porto Rico is contained in section 234 of the Civil Code, as follows:

"Section 234.—The father or the mother loses the *patria potestas* over his or her children, when, in a suit for divorce, a final decree awards the custody of the children to one or the other party."

And that section, with others closely connected therewith, was construed by this Supreme Court in the *Mallén Case, supra,* as follows:

"When a marriage is dissolved by a decree of divorce and the innocent spouse is awarded the custody and *patria potestas* of the minor children in accordance with section 234 of the Civil Code, the guilty spouse cannot regain the *patria potestas* upon the death of the other; for the nature of the custody awarded to the innocent spouse is to destroy the legal relation existing between the guilty parent and the children, although family relations, as distinguished from *patria potestas,* may continue, according to section 175 of the said code." 25 P.R.R. 624.

The jurisprudence has been duly published and it is to be presumed that the Legislature is familiar with it; but if for some reason it is not, the present decision will serve to bring up the question again, it being the province of the Legislature to act by adopting the criterion of the Spanish Civil Code, or by conferring ample power upon the courts for declaring the *patria potestas* vested in the *guilty* spouse, if such a spouse be in a condition to exercise it for the good of the children, in case of the death or incapacity of the *innocent* spouse, or by enacting any other measure that it may in its wisdom find advisable; or it may leave matters in their present condition.

By reason of all of the foregoing the judgment appealed from should be reversed and the case remanded to the court of its origin for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

Justices Wolf and Aldrey concurred.
Justices Hutchison and Franco Soto dissented.